**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA DIVISION**

| | |
|---|---|
| EZRA JONES, individually and on behalf of all others similarly situated, <br><br> v. <br><br> C&D SECURITY MANAGEMENT, INC. d/b/a ALLIED UNIVERSAL SECURITY SERVICES; C&D ENTERPRISES, INC. d/b/a ALLIED UNIVERSAL SECURITY; UNIVERSAL PROTECTION SERVICES, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES, LLC; SOS SURCURITY LLC d/b/a SOS SECURITY LLC d/b/a ALLIED UNIVERSAL RISK ADVISORY AND CONSULTING SERVICES; SECURADYNE SYSTEMS INTERMEDIATE LLC d/b/a ALLIED UNIVERSAL TECHNOLOGY SERVICES; ALLIED BARTON SECURITY SERVICES, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES; AND UNIVERSAL SERVICES OF AMERICA, LP d/b/a ALLIED UNIVERSAL SECURITY SERVICES | **Case No.** _____ <br> FLSA Collective Action <br> FED. R. CIV. P. 23 Class Action |

**PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.     Defendants, along with their subsidiaries and alter-egos, are referred to collectively throughout this Complaint as "Allied Universal."

2.     Like many other companies across the United States, Allied Universal's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

3.     That hack led to problems in timekeeping and payroll throughout Allied Universal's organization.

4.      As a result, Allied Universal's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

5.      Ezra Jones is one such Allied Universal worker.

6.      Allied Universal could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

7.      But it didn't. Instead, Allied Universal used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

8.      Allied Universal pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

9.      Allied Universal made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

10.     Allied Universal's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.

11.     Allied Universal's failure to pay wages, including proper overtime, for all hours worked to its workers in California also violates California law.

12.     Jones brings this lawsuit to recover these unpaid overtime wages and other damages owed by Allied Universal to him and Allied Universal's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Allied

Universal's decision to make its own non-exempt employees workers bear the economic burden for the hack.

13.     This action seeks to recover the unpaid wages and other damages owed by Allied Universal to all these workers, along with the penalties, interest, and other remedies provided by federal and California law.

## JURISDICTION & VENUE

14.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15.     The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Allied Universal is headquartered in this District.

## PARTIES

17.     **Plaintiff Ezra Jones** is a natural person.

18.     Jones was, at all relevant times, an employee of Allied Universal.

19.     Jones worked for Allied Universal in California.

20.     Jones represents at least two groups of similarly situated Allied Universal workers.

21.     Jones represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Allied Universal (including its subsidiaries and alter egos), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Jones represents a class of similarly situated workers under California law pursuant to Federal Rule of Civil Procedure 23. This "California Class" is defined as:

> **All current or former non-exempt employees of Allied Universal (including its subsidiaries and alter egos) who worked in California at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

24. **Defendant C&D Security Management, Inc. d/b/a Allied Universal Security Services** is a domestic corporation.

25. C&D Security Management, Inc. is headquartered in this District.

26. C&D Security Management, Inc. may be served at its registered address, **161 Washington St., Ste. 600, Conshohohocken, PA 19428**, or by any other method allowed by law.

27. **C&D Enterprises, Inc. d/b/a Allied Universal Security** is a domestic corporation.

28. C&D Enterprises, Inc.is headquartered in this District.

29. C&D Enterprises, Inc. may be served at its registered address, **161 Washington St., Ste. 600, Conshohohocken, PA 19428**, or by any other method allowed by law.

30. **Defendant Universal Protection Services, LLC d/b/a Allied Universal Security Services, LLC** is a domestic limited liablity company.

31. Universal Protection Services, LLC is headquartered in this District.

32. Universal Protection Services, LLC does business in a systematic and continuous mannter throughout Pennsylvania and this District.

33.     Universal Protection Services, LLC may be served by service upon its registered agent, **Corporation Services Company (CSC – Lawyers Incorporating Service), 2710 Gateway Oaks Dr., Ste. 150N, Sacramento, CA 95833**, or by any other method allowed by law.

34.     **Defendant SOS Surcurity LLC d/b/a SOS Security LLC d/b/a Allied Universal Risk Advisory and Consulting Services** is a domestic limited liability company.

35.     SOS Surcurity LLC is headquartered in this District.

36.     SOS Surcurity LLC may be served at its registered address, **161 Washington St., Ste. 600, Conshohohocken, PA 19428**, or by any other method allowed by law.

37.     **Defendant Securadyne Systems Intermediate LLC d/b/a Allied Universal Technology Services** is a foreign limited liability company.

38.     Securadyne Systems Intermediate LLC is headquartered in this District.

39.     Securadyne Systems Intermediate LLC may be served at its principal address, **161 Washington St., Ste. 600, Conshohohocken, PA 19428**, or by any other method allowed by law.

40.     **Defendant Allied Barton Security Services, LLC d/b/a Allied Universal Security Services** is a foreign limited liability company.

41.     Allied Barton Security Services, LLC is headquartered in this District.

42.     Allied Barton Security Services, LLC may be served at its principal address, **161 Washington St., Ste. 600, Conshohohocken, PA 19428**, or by any other method allowed by law.

43.     **Defendant Universal Services of America, LP d/b/a Allied Universal Security Services** is a foreign limited partnership.

44.     Universal Services of America, LP is headquartered in this District.

45.     Universal Services of America, LP does business in a systematic and continuous mannter throughout Pennsylvania and this District.

46.     Universal Services of America, LP may be served by service upon its registered agent, **Corporation Services Company (CSC – Lawyers Incorporating Service), 2710 Gateway Oaks Dr., Ste. 150N, Sacramento, CA 95833**, or by any other method allowed by law.

47.     At all relevant times, Defendants have been doing business under the assumed names, "Allied Universal" and "Allied Universal Security Services."

48.     At all relevant times, Defendants exerted operational control over their respective subsidiaries and alter egos.

49.     At all relevant times, Defendants substantially controlled the terms and conditions of employment for workers of their respective subsidiaries and alter egos.

50.     At all relevant times, Defendants had a common control and management of labor relations regarding employees of respective subsidiaries and alter egos.

51.     Defendants employed and/or jointly employed, with its subsidiaries and alter egos, Jones and the Similarly Situated Workers.

52.     Defendants and their respective subsidiaries and alter egos are joint employers for purposes of the FLSA.

53.     Defendants and their respective subsidiaries and alter egos are joint employers for purposes of California law.

## COVERAGE UNDER THE FLSA

54.     At all relevant times, Allied Universal was an employer of Jones within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

55.     At all relevant times, Allied Universal was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

56.     Allied Universal was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

57.     During at least the last three years, Allied Universal has had gross annual sales in excess of $500,000.

58.     Allied Universal was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

59.     Allied Universal employs many workers, including Jones, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

60.     The goods and materials handled, sold, or otherwise worked on by Jones, and other Allied Universal employees and that have been moved in interstate commerce include, but are not limited to, security supplies and equipment.

## FACTS

61.     Allied Universal provides security personnel, technology, and professional services.

62.     Allied Universal employs over 800,000 workers. Allied Universal, Our People, https://www.aus.com/about-us/our-people (last visited Apr. 19, 2022).

63.     Many of Allied Universal's employees are non-exempt hourly and salaried workers.

64.     Since at least 2021, Allied Universal has used timekeeping software and hardware operated and maintained by Kronos.

65.     On or about December 11, 2021, Kronos was hacked with ransomware.

66.     The Kronos hack interfered with the ability of its customers, including Allied Universal, to use Kronos's software and hardware to track hours and pay employees.

67.     Since the onset of the Kronos hack, Allied Universal has failed to keep accurate track of the hours that Jones and Similarly Situated Workers have worked.

68.     Instead, Allied Universal has used various methods to estimate the number of hours Jones and Similarly Situated Workers work in each pay period.

69.     For example, Allied Universal issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

70.     As a result of Allied Universal's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

71.     Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

72.     Jones is one of the thousands of employees affected by these pay and timekeeping practices.

73.     Instead of paying Jones for the hours she actually worked (including overtime hours), Allied Universal simply paid based on estimates of time or pay, or based upon

arbitrary considerations **other than** Jones's actual hours worked and regular pay rates, in multiple workweeks.

74.     In some instances, Jones was paid portions of the overtime he worked, but the overtime rate he was paid was not at least 1.5 times his agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

75.     In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

76.     Allied Universal knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

77.     Allied Universal knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

78.     Allied Universal could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

79.     Instead of accurately tracking hours and paying employees their overtime, Allied Universal decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

80.     Even to the extent it did pay some overtime to affected employees, Allied Universal failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Allied Universal did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

81.     It was feasible for Allied Universal to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

82.     But it chose not to do that.

83.     In other words, Allied Universal pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

84.     Jones is just one of the many Allied Universal employees who had to shoulder the burden of this decision by Allied Universal.

85.     Jones was a non-exempt hourly employee of Allied Universal.

86.     Jones regularly worked over 40 hours per week for Allied Universal.

87.     Jones's normal, pre-Kronos hack hours are reflected in Allied Universal's records.

88.     Since the Kronos hack, Allied Universal has not paid Jones for his actual hours worked each week.

89.     Since the hack took place, Allied Universal has not been accurately recording the hours worked by Jones and its other workers.

90.     Even when Allied Universal has issued payment to Jones for any overtime, the overtime is not calculated based on Jones's regular rates, as required by federal law.

91.     Allied Universal was aware of the overtime requirements of the FLSA.

92.     Allied Universal nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Jones.

93. Allied Universal's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

94. The full overtime wages owed to Jones and the Similarly Situated Workers became "unpaid" when the work for Allied Universal was done—that is, on Jones and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

95. At the time Allied Universal failed to pay Jones and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Allied Universal became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

96. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

97. Even if Allied Universal made any untimely payment of unpaid wages due and owing to Jones or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

98. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

99.    Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Allied Universal's acts and omissions resulting in the unpaid wages in the first place.

100.    Jones and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Allied Universal under federal and state law.

### COLLECTIVE ACTION ALLEGATIONS

101.    Jones incorporates all other allegations.

102.    Numerous individuals were victimized by Allied Universal's patterns, practices, and policies, which are in willful violation of the FLSA.

103.    Based on his experiences and tenure with Allied Universal, Jones is aware that Allied Universal's illegal practices were imposed on the FLSA Collective.

104.    The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

105.    These employees are victims of Allied Universal's respective unlawful compensation practices and are similarly situated to Jones in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

106.    The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

107.    Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

108.    Allied Universal's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

109.    The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

110.    Jones incorporates all other allegations.

111.    The illegal practices Allied Universal imposed on Jones were likewise imposed on the California Class members.

112.    Numerous other individuals who worked for Allied Universal were were not properly compensated for all hours worked, as required by California law.

113.    The California Class is so numerous that joinder of all members of the class is impracticable.

114.    Allied Universal imposed uniform practices and policies on Jones and the California Class members regardless of any individualized factors.

115.    Based on his experience and tenure with Allied Universal, as well as coverage of the Kronos hack, Jones is aware that Allied Universal's illegal practices were imposed on the California Class members.

116.    California Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

117.    Allied Universal's failure to pay wages and overtime compensation in accordance with California law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the California Class members.

118.    Jones's experiences are therefore typical of the experiences of the California Class members.

119.    Jones has no interest contrary to, or in conflict with, the members of the California Class. Like each member of the proposed class, Jones has an interest in obtaining the unpaid wages and other damages owed under the law.

120.    A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

121.    Absent this action, many California Class members likely will not obtain redress of their injuries and Allied Universal will reap the unjust benefits of violating California law.

122.    Furthermore, even if some of the California Class members could afford individual litigation against Allied Universal, it would be unduly burdensome to the judicial system.

123.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

124.    The questions of law and fact common to each of the California Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

     a.    Whether the California Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

     b.    Whether the California Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 8 or 12 in a single day; and

     c.    Whether Allied Universal's failure to pay overtime at the rates required by law violated California law.

125.    Jones's claims are typical of the California Class members. Jones and the California Class members have all sustained damages arising out of Allied Universal's illegal and uniform employment policies.

126.    Jones knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

127.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA AS TO JONES AND THE FLSA COLLECTIVE

128.    Jones incorporates each other allegation in Paragraphs 1-127 of the Complaint.

129.    By failing to pay Jones and the FLSA Collective members overtime at 1.5 times their regular rates, Allied Universal violated the FLSA. 29 U.S.C. § 207(a).

130.    Allied Universal owes Jones and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

131.    Allied Universal owes Jones and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

132.    Likewise, Allied Universal owes Jones and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

133.    Allied Universal knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

134.    Because Allied Universal knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Allied Universal owes these wages for at least the past three years.

135.    Allied Universal's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

136.    Because Allied Universal's decision not to pay overtime was not made in good faith, Allied Universal also owes Jones and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

137.    Accordingly, Jones and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW AS TO JONES AND THE CALIFORNIA CLASS

138.    Jones incorporates each other allegation in Paragraphs 1-127 of the Complaint.

139.    The California Labor Code requires that all employees, including Jones and the California Class, receive 1.5x their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

140.    Despite working over 8 hours a day as part of their normal and regular shift, Jones and the California Class did not receive proper overtime compensation for all hours worked over 8 in one day.

141.    The California Labor Code also requires that all employees, including Jones and the California Class, receive 2x times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

142.    Although Jones and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

143.    The California Labor Code requires that all employees, including Jones and the California Class, receive 2x the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders #1-2001 through #17-2001.

144.    Although Jones and the California Class regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

145.    This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Jones and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

### THIRD CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS
### AS TO JONES AND THE CALIFORNIA CLASS

146.     Jones incorporates each other allegation in Paragraphs 1-127 of the Complaint.

147.     California Labor Code section 226 requires Allied Universal to keep accurate records regarding the rates of pay for their California employees and provide that information to Jones and the California Class with their wage payment.

148.     Because Allied Universal failed to pay Jones and the California Class lawful wages, it did not maintain accurate records of Jones and the California Class's daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Jones and the California Class with their wages.

149.     This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Jones and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

### FOURTH CAUSE OF ACTION—WAITING TIME PENALTIES
### AS TO JONES AND THE CALIFORNIA CLASS

150.     Jones incorporates each other allegation in Paragraphs 1-127 of the Complaint.

151.     At all relevant times, Allied Universal was required to pay Jones and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

152.     As a result of Allied Universal's alleged California Labor Code violations, Allied Universal regularly failed to pay Jones and the California Class their final wages

pursuant to California Labor Code sections 201 to 204, and accordingly Allied Universal owes waiting time penalties pursuant to California Labor Code section 203.

153.    The conduct of Allied Universal, in violation of Jones and the California Class members' rights, was willful and was undertaken by the agents, employees, and managers of Allied Universal.

154.    Allied Universal's willful failure to provide Jones and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

155.    Therefore, Jones and the California Class members who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

### FIFTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW AS TO JONES AND THE CALIFORNIA CLASS

156.    Jones incorporates each other allegation in Paragraphs 1-127 of the Complaint.

157.    Allied Universal has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) accurate wage statements; and (4) waiting time penalties.

158.    As a result of Allied Universal's failure to comply with federal and state law, Allied Universal has also violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

159.    The relevant acts by Allied Universal occurred within the four years preceding the filing of this action.

160.    On information and belief, Allied Universal has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200 *et seq.*, including those set forth above, depriving Jones and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

161.    Jones and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

162.    Jones and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting Allied Universal from engaging in the violations and other misconduct referred to above.

163.    Allied Universal is also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

### SIXTH CAUSE OF ACTION—CIVIL PENALTIES UNDER PAGA AS TO JONES AND THE CALIFORNIA CLASS

164.    Jones incorporates each other allegation in Paragraphs 1-127 of the Complaint.

165.    Jones and the California Class are aggrieved employees within the meaning of California Labor Code section 2699.

166.    As aggrieved employees, Jones and the California Class seek to recover of civil penalties against Allied Universal pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698 *et seq.*

167.  Allied Universal has knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

a.  Failing to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders #1-2001 through #17-2001);

b.  Failing to provide compensation for missed meal and rest periods (CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001);

c.  Violating record keeping requirements (CAL. LAB. CODE § 226);

d.  Unlawfully collecting, receiving, or withholding wages (CAL. LAB. CODE §§ 221, 225.5);

e.  Failing to pay wages promptly following termination of employment, or when due and payable (CAL. LAB. CODE § 203).

168.  The civil penalties sought by Jones and the California Class include the recover of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

169.  Jones and the California Class seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Jones and the California Class pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

170.  Jones and the California Class will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

171.  Jones provided notice to Defendants of their California Labor Code and IWC Wage Orders violations on April 19, 2022.

172.  On the same date, Jones submitted notice to the California Labor and Workplace Development Agency (LWDA) as required by PAGA.

173.   Jones's notice to Rockport, Vernon, and the LWDA advises each of them of the intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

174.   If the LWDA declines to investigate or prosecute, Jones and the California Class will pursue their PAGA claims in the course of this action.

175.   Jones and the California Class had to retain counsel to file this action to protect their interests and to assess and collect the civil penalties owed by Defendants.

176.   Jones and the California Class have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA.

**RELIEF SOUGHT**

Jones prays for judgment against Allied Universal as follows:

a.   For an order certifying a collective action for the FLSA claims;

b.   For an order certifying a class action for the California law claims;

c.   For an order finding Allied Universal liable for violations of federal wage laws with respect to Jones and all FLSA Collective members covered by this case;

d.   For an order finding Allied Universal liable for violations of California wage laws with respect to Jones and all California Class members covered by this case;

e.   For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Jones and all FLSA Collective members covered by this case;

f.   For a judgment awarding all unpaid wages, liquidated damages, and penalties under California wage laws to Jones and all California Class members covered by this case;

g.   For an equitable accounting and restitution of wages due to Jones and all FLSA Collective and California Class members members covered by this case;

h.    For a judgment awarding attorneys' fees to Jones and all FLSA
      Collective and California Class members covered by this case;

i.    For a judgment awarding costs of this action to Jones and all FLSA
      Collective and California Class members covered by this case;

j.    For a judgment awarding pre- and post-judgment interest at the highest
      rates allowed by law to Jones and all FLSA Collective and California
      Class members covered by this case; and

k.    For all such other and further relief as may be necessary and
      appropriate.

Respectfully submitted,

By: _/s/ Angeli Murthy_____
**Angeli Murthy, Esq.**
PA Bar No. 93699
**MORGAN & MORGAN, P.A.**
8151 Peters Rd., Suite 4000
Plantation, FL 33324
Telephone: (954) 327-5369
Facsimile: (954) 327-3016
Email: amurthy@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**